**FRANHAN DISTRIBUTORS, Inc., v. NEW YORK WORLD'S FAIR 1939, Inc., et al.**

**No. 65.**

Circuit Court of Appeals, Second Circuit.

Dec. 8, 1941.

Pfeiffer & Crames, of New York City, (Alexander Pfeiffer and Paul N. Pfeiffer, both of New York City, of counsel), for appellant.

Lord, Day & Lord, of New York City (Thomas F. Daly and Franklin B. Lord, Jr., both of New York City, of counsel), for defendant New York World's Fair Inc. 1939.

White & Case, of New York City, (Lowell Wadmond, of New York City, of counsel), for appellee Swift & Co.

Before SWAN, CHASE, and FRANK, Circuit Judges.

CHASE, Circuit Judge.

This suit, originally brought in the Supreme Court of the State of New York, was removed to the Southern District of New York and there tried to a jury. At the close of the plaintiff's evidence, the court granted a motion to dismiss the complaint as to each defendant for failure to prove a prima facie case and the plaintiff has appealed. The cause of action alleged against the defendant New York World's Fair 1939 Incorporated, which will be called the Fair, was the breach of a contract the plaintiff claimed to have made with it for a concession at the Fair and that against Swift & Company was for inducing the breach of the contract.

The plaintiff was one of five who, having with a dozen others satisfied the preliminary requirements of the Fair, submitted bids on what is called a concession for the sale of hamburgers, frankfurters, coffee, tea and milk at the New York World's Fair. It is undisputed that it was the highest bid made and also undisputed that the Fair had reserved the right to reject any and all bids if it so pleased as well as the right to award the concession to one other than the highest bidder. And it is also undisputed that the plaintiff's bid was never accepted in writing as required, before the Fair should be bound, by the specifications on which the plaintiff acted in submitting its bid.

The trial court put no reliance upon any failure to carry out the formal provisions of the specifications as to the manner of, or restrictions upon, contracting; realizing that they were subject to waiver, and let decision turn on the broad, decisive ground that the plaintiff failed to show that anyone having authority to accept its bid ever did so in behalf of the Fair before all bids were, of right, rejected.

The record shows, inter alia, that after the five bids were received they were opened and read publicly at the office of the Fair in the Empire State Building in New York City on Feb. 1, 1938. This was done by the Secretary of the Fair in the presence of representatives of the plaintiff and others and of the following who represented the Fair: Mr. Hemingway, an attorney and member of the firm of Lord, Day & Lord, counsel for the Fair; Mr. Mermey, the Acting Director of Concessions and Exhibits; and Commander Flanigan, then the Administrative Assistant to the President.

The parties are not entirely in accord as to what was said and done respecting the plaintiff's bid after all the bids were read but it is undisputed that no one on behalf of the Fair accepted the plaintiff's bid before all bids were rejected unless one or more of the three men named above did so. And as we agree with the trial judge that neither individually nor collectively were they shown to have had authority to accept the bid, whatever conflict there may be as to what was in fact said or done is not of great importance.

It is certain that the plaintiff's bid was treated as the highest and Mr. Hemingway prepared a contract for the concession in accordance with the terms of the bid. He tried to telephone a Mr. Trulis who was stated in the preliminary information furnished the Fair to be plaintiff's president but, being unable to find a trace of him, called instead a Mr. Golde who was not in but in response called Mr. Hemingway on the morning of Feb. 2, 1938 and the two men arranged to meet and did meet with others that afternoon at the office of the Fair where the bids had been opened the previous day. The plaintiff's claim is that this meeting was for execution of the formal contract which had been drawn by Mr. Hemingway; while that of the Fair is that it was for further discussion as to the terms of the plaintiff's bid.

For the purpose of determining whether or not there is any substance to this appeal we may assume, without more, that the three men who were acting for the Fair understood that the plaintiff's bid was the highest; believed that it would be accepted; and in so far as they were authorized so to do did all they could to bring about its acceptance. Being a bid which

contemplated the execution of what was in part a lease of space on the grounds of the Fair for a term of not more than a year which was to begin in the future, acceptance did not as a matter of law have to be in writing. New York Real Property Law, §§ 242, 259; Ward v. Hasbrouck, 169 N.Y. 407, 419, 62 N.E. 434. Nor is the express provision that acceptance, to be binding upon the Fair, must be in accord with stated requirements to be treated as immutable. Authorized representatives of the Fair could waive such provisions and if they did so the restrictions would disappear as a condition upon the making of a contract. Sanders v. Pottlitzer Bros. Fruit Co., 144 N.Y. 209, 39 N.E. 75, 76, 29 L.R.A. 431, 43 Am.St.Rep. 757; Lehigh Structural Steel Co. v. Great Lakes Const. Co., 2 Cir., 72 F.2d 229.

But where a bidder had been previously informed, as this plaintiff had been, that the only binding acceptance of a bid would be a notice in writing signed by a duly authorized representative of the Fair it was bound to know that any other mode of acceptance would be a departure from that prescribed and ostensibly unauthorized. The plaintiff was, accordingly, also bound to take suitable steps to ascertain the actual authority of those with whom it undertook to deal in a manner other than that which it had been informed was essential to the making of a valid contract. The unperformed duty of inquiry may, and often does, make it impossible to rely upon any so-called apparent authority of an agent. Ernst Iron Works v. Duralith Corp., 270 N.Y. 165, 200 N.E. 683; Marvin v. Universal Life Insurance Co., 85 N.Y. 278, 39 Am.Rep. 657; Cullinan v. Bowker, 180 N.Y. 93, 72 N.E. 911; Drennan v. Sun Indemnity Co., 271 N.Y. 182, 2 N.E.2d 534.

Moreover, here there was nothing to induce any belief on the part of the plaintiff's representatives that any of the men with whom they talked at the offices of the Fair in the Empire State Building intended to vary in any way the stated requirements for the binding acceptance of a bid by the Fair. The contract which had been prepared showed on its face that it was to be executed by the Fair, if at all, by someone other than any of them. While it seems to have been taken for granted that execution of the contract would follow in due course, that was because the giving of needed approval was assumed rather than any thought that no additional approval was necessary. Since the plaintiff based its cause of action upon an oral acceptance of its bid before the formal rejection of all the bids, it was necessary for it to show that the men with whom it dealt had authority to accept its bid as it claims they did. Schutz v. Jordan, 141 U.S. 213, 11 S.Ct. 906, 35 L.Ed. 705; Ferro Const. Co. v. United States, 1 Cir., 112 F.2d 488. The evidence offered and received clearly fell short of providing the required proof and unless there was error in the exclusion of evidence the plaintiff sought to introduce the judgment must be affirmed.

The trial judge held the plaintiff strictly to its prima facie proof of the authority of Messrs. Hemingway, Mermey and Flanigan to act in behalf of the Fair in accepting its bid as a condition precedent to the introduction of evidence as to what they actually said and did. Often it is better to admit evidence tentatively upon assurance that its competency will appear and the discretionary power of the judge is ample for that. Stecher Lithographic Co. v. Inman, 175 N.Y. 124, 67 N.E. 213. The judge, however, repeatedly assured the plaintiff's attorney that any evidence of agency he offered would be received and was well within the realm of sound discretion in being insistent that some of such proof precede the introduction of any so-called admissions of the alleged agents. At most they were special agents who could not bind their principal by declarations, or what are sometimes called admissions, as to the scope of their authority. That had to be proved otherwise than by their own representations. Dudley v. Perkins, 235 N.Y. 448, 139 N.E. 570; Edwards v. Dooley, 120 N.Y. 540, 24 N.E. 827; Wakefield Rattan Co. v. Tappan, 80 Hun 219, 30 N.Y.S. 38. Furthermore, there is no reasonable cause for believing that the plaintiff could have shown any such declarations or admissions if answers to the excluded questions had been taken.

There was one excluded part of the pre-trial examination of Mr. Whalen, president of the Fair, which is said to have been admissible. It was not, indeed, the declaration of an alleged agent and had it been less vague and inconsequential its exclusion might not have been harmless. He was asked when he first learned that Mr. Hemingway had prepared the draft of the contract for the concession following the plaintiff's bid and replied: "I don't know as I had any definite knowledge that this

specific concession agreement was drawn except that it was in the line of Mr. Hemingway's responsibility to draw these immediately after bids were received and accepted by the corporation." Besides indicating an absence of knowledge as to what had been done in respect to the contract about which he was asked, the witness merely volunteered his understanding of when Mr. Hemingway would draw a contract in performing his work as counsel to the Fair. When Hemingway generally drew such contracts was obviously irrelevant to the question of his, or Mermey's or Flanigan's actual authority to accept plaintiff's bid. At most the excluded evidence might have given some rather dubious support to an inference that Hemingway prepared the contract because he understood that the plaintiff's bid had been accepted. Even so, the evidence still but tended to show an irrelevant fact. What Hemingway may have understood, and we do not intimate that he did understand that plaintiff's bid had been accepted, was immaterial certainly until he was first by competent evidence shown to have had authority to bind the Fair in some way in respect to that bid.

No contract with the Fair having been proved, the plaintiff failed to prove any cause of action alleged against either defendant.

Affirmed.